**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0226-20

SISTERS OF CHARITY OF
SAINT ELIZABETH,

    Plaintiff-Respondent,

v.

TOWNSHIP OF MORRIS and
THE TOWNSHIP COMMITTEE
OF THE TOWNSHIP OF MORRIS,

    Defendants-Appellants.

_____

Submitted June 8, 2021 – Decided June 24, 20212

Before Judges Yannotti, Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0975-20.

Mills & Mills, attorneys for appellants (John M. Mills, III, of counsel and on the briefs).

Hill Wallack LLP, attorneys for respondent (Thomas F. Carroll, III, of counsel and on the brief).

PER CURIAM

Defendants Township of Morris (Morris) and the Township Committee of Morris appeal from the Law Division's August 11, 2020 order requiring them "to immediately accept ownership, maintenance[,] and control of [a] sewer pump and force main" currently owned and operated by plaintiff Sisters of Charity of Saint Elizabeth in the Borough of Florham Park (Florham Park). After carefully reviewing the record, we conclude the trial court erred by: (1) issuing a permanent injunction on the return date of an order to show cause, and (2) conducting this matter as a summary proceeding under Rule 4:67-1(a) and thereby failing to develop the meager record and properly address the many material disputes of fact existing between the parties. Therefore, we vacate the portion of August 11, 2020 order directing defendants to assume ownership, maintenance, and control of plaintiff's pump station and force main, and remand for further proceedings.

I.

We begin by reciting the barebone facts presented in the record on appeal. In doing so, we also point out the deficiencies in that record and identify the additional facts that should have been developed before the trial court considered the matter on its merits.

Plaintiff is a religious organization that owns 151.77 acres of property that straddles Morris and Florham Park. The largest portion of the property, 101.79 acres, lies in Florham Park, and the remaining 49.98 acres are in Morris. Plaintiff owns a convent, a high school, a college, student housing, and other residences on its Florham Park property.

Florham Park has its own sewer treatment system, as does Morris. Nevertheless, Florham Park is located within Morris' "sewer service area" as approved by the New Jersey Department of Environmental Protection. Morris operates a sewer treatment plant known as the Woodland Sewage Treatment Plant.

Plaintiff previously owned and operated its own sewer treatment plant for the effluent it generated on its Florham Park property. However, in 1981, plaintiff sought to send the effluent to the Florham Park and Morris sewer systems. Only Morris would allow plaintiff access to its system.

On July 28, 1981, plaintiff, Morris, and Florham Park entered into a written contract permitting plaintiff to connect to the Morris sewer system. Under the contract's terms, plaintiff agreed to construct a sewer pump station and force main to deliver its effluent to the Morris system. Plaintiff would own this new system and would operate it as a private utility.

3

Plaintiff further agreed that "[n]either [Morris, Florham Park], nor the [Florham Park Sewerage Authority (FPSA)] will, <u>under any circumstances</u>, be responsible for the construction, maintenance or operation of [plaintiff's] System or its connection to the [Morris] System." (emphasis added). However, the agreement stated that Florham Park had the right to "demand" that plaintiff's system "be disconnected from the [Morris] System and connected to the FPSA System" if Florham Park extended its system to a road adjacent to plaintiff's property.

Plaintiff retained a private company to operate the pump station and force main in Florham Park. However, it did not identify this company in its trial court papers and its attorney did not do so at oral argument. While plaintiff alleged in its complaint that the Board of Public Utilities did not want the system to be owned and operated by it, plaintiff did not submit any written evidence to support this assertion and its attorney conceded at oral argument that he did not "think there's been any threat that they've been shut down."

Indeed, in the forty years that plaintiff has owned and operated its system, plaintiff also has used its pump station and force main to transport effluent from at least two other entities in Florham Park to the Morris sewer system. These

4

entities include the Morris County Golf Club and a housing development known as The Villa at Florham Park.[1]

On June 12, 2017, plaintiff contracted with Toll Brothers, a construction company, to sell it a "portion" of its Florham Park property. According to the complaint, Toll Brothers proposed to build 198 units of multi-family housing on that property and set aside twenty percent of those units for "low and moderate income households."

Plaintiff did not provide the trial court with a copy of its contract of sale with Toll Brothers or any other related documents. At oral argument, the trial court acknowledged that without those documents, it had no basis for knowing whether plaintiff and Toll Brothers had made any agreement concerning the provision of sewer services to the development site or whether plaintiff's "contract with Toll Brothers may be in peril" if plaintiff did not immediately receive the permanent injunctive relief it sought in this case. At the time the August 11, 2020 order that is the subject of this appeal was entered, no closing on the sale of the property had occurred and nothing in the record indicates

---

[1] While plaintiff asserts that the 1981 agreement was amended to permit it to add the golf club and housing development to its system, these amendments were not submitted to the trial court.

A-0226-20

whether there was any deadline by which such a closing had to take place in order for the sale to be consummated.

On October 31, 2018, the Law Division entered a Final Judgment of Compliance and Repose in a Mt. Laurel[2] dispute between Morris and the Fair Share Housing Center (FSHC). Under the terms of the settlement agreement that formed the basis for that judgment, Morris agreed to rezone a portion of plaintiff's property in that township for affordable housing. Although not stated in the settlement agreement, Morris asserted that the effluent generated by that development would be accepted into the Morris sewer system by gravity flow and without the need for a separate pump station or force main.

On March 7, 2019, the Law Division entered a similar judgment resolving a Mt. Laurel lawsuit between Florham Park and the FSHC. Under the terms of a July 28, 2017 settlement agreement that resulted in the judgment in that case, Florham Park agreed to rezone approximately twenty-two acres of the land plaintiff owned in that borough for affordable housing. The settlement stated there was a plan that twenty percent of the housing on the site would be used for "affordable dwelling units." Neither the settlement agreement nor the judgment said anything about plaintiff's or Florham Park's responsibility to provide sewer

---

[2] In re Adoption of N.J.A.C. 5:96 and 5:97, 221 N.J. 1 (2015).

service to, or operate the pump station and force main for the benefit of, the Toll Brothers development.

At some unknown point in time, plaintiff decided that Morris should take over the responsibility of owning and operating its pump station and force main. In its complaint, plaintiff stated that "the ownership and operation of the pump station and force main [wa]s both costly and burdensome to" it and it "need[ed] to get 'out of the sewer business.'"[3] Although plaintiff acknowledged that the operation of its system was both "costly and burdensome," it did not provide any information to the trial court as to the yearly cost it incurs for operating and maintaining the pump station and force main.

Just a few weeks after the court approved Florham Park's Mt. Laurel settlement, representatives for plaintiff, Florham Park, and Morris met. At the March 15, 2019 meeting, plaintiff asked that the effluent from the proposed Toll Brothers development be permitted to enter either the Morris or Florham Park sewer system for treatment. Plaintiff also asked that one of the towns take over the pump station and force main. In return, plaintiff stated it would pay for any

---

[3] Plaintiff stated the average age of the members of its religious order was eighty-two years old. However, plaintiff has always conceded that its members do not, and never have, personally operated the pump station and force main and, instead, have always retained a fully qualified outside entity to do so.

A-0226-20

repairs or improvements needed in its system as part of any agreement. If plaintiff submitted a written document setting forth its proposed terms to the two towns, it was not submitted to the trial court and is not part of the appellate record.

According to plaintiff's complaint, Florham Park stated that it did not have the capacity in its sewer system or treatment system to accept additional effluent flow. Critically, the complaint does not assert that Florham Park ever demonstrated that it lacked the capacity to take over the operation of the pump station and force main. Morris asserts that Florham Park already owns and operates several pump stations of its own in its borough, which send effluent into the Morris sewer system. As discussed below, Florham Park "stayed out of the fray" of this litigation and did not submit any certifications or documents setting forth its position in the trial court.

At the March 2019 meeting, Morris indicated it would review plaintiff's request. However, it asked plaintiff to fund a study by Morris' consulting engineers to determine the scope of any improvements in plaintiff's system that would have to be made. Although plaintiff states in his brief that plaintiff paid for this survey and that it was completed, plaintiff did not submit a copy of it to the trial court and, therefore, it is not a part of the record on appeal.

8

In addition, there is nothing in the record indicating the cost plaintiff would have to incur to bring the pump station and force main up "to present day engineering standards." At oral argument, the trial court asked plaintiff's attorney for this information, but all he was able to say in response was: "I couldn't quote [a cost estimate] to you right now but I know it's in the hundreds of thousands of dollars, you know. Exactly how much, I'm not sure." The record also does not contain any information as to whether plaintiff was proposing to convey only the pump station and force main to one of the towns or whether it was also going to transfer ownership of the property in Florham Park where this system is located.

After reviewing the matter, Morris sent plaintiff a letter on January 27, 2020, stating that it did not want to accept any effluent from the Toll Brothers project into its system and it did not want to take over ownership, maintenance, and control of plaintiff's pump station and force main in Florham Park. Morris advised plaintiff that it believed the density of the Toll Brothers development was too high for the area. Nevertheless, Morris stated it would consider changing its mind if plaintiff agreed that it would not further develop its property in Florham Park and Morris. Plaintiff would not accede to this request.

After further discussions, however, Morris agreed to allow plaintiff to send effluent from its Florham Park property through plaintiff's pump station and force main into the Morris sewer system after the property was sold to, and developed by, Toll Brothers. However, Morris unequivocally stated it would not take over ownership, maintenance, and control of plaintiff's Florham Park sewer facility.

On May 1, 2020, plaintiff filed a verified complaint and order to show cause against defendants. It did not name Florham Park as a defendant even though the pump station and force main are located in that township and the development proposed by Toll Brothers was designed to satisfy Florham Park's Mt. Laurel affordable housing requirement. Plaintiff also did not name Toll Brothers as a defendant even though, as the developer, that company would presumably be responsible for ensuring that the development could be connected to a sewer system.

The trial court issued an order to show cause on May 5, 2020, and set a return date of June 15, 2020. The court's order directed defendants to show cause "why judgment should not be entered . . . [o]rdering [them] to immediately accept ownership, maintenance[,] and control of the pump station/force main serving the [p]laintiff's property located in the Borough of Florham Park . . . ."

A-0226-20

The court also directed defendants to show cause why they should not be required to provide sewer treatment services for the proposed Toll Brothers development. The order also stated that "it further appear[s] that the plaintiff moves to have this [c]ourt hear this cause summarily pursuant to New Jersey Court Rules 4:67-1(a) and 4:67-2 . . . ."

In support of its complaint, plaintiff submitted copies of (1) the final judgments of compliance and repose in the Morris and Florham Park Mt. Laurel cases; (2) the settlement agreement between Florham Park and the FSHC in its Mt. Laurel case; (3) the 1981 agreement between plaintiff, Morris, and Florham Park; (4) the January 27, 2020 letter Morris sent to plaintiff; and (5) a four-page certification prepared by a "licensed professional engineer and professional planner." Although this individual stated that he had "personal knowledge of the facts related" in his certification, he did not disclose how he obtained this information. In any event, the assertions in the certification largely parrot those set forth in plaintiff's complaint.

On May 29, 2020, defendants filed an answer and a third-party complaint against Florham Park and the FPSA. However, Morris did not properly serve the complaint upon the Florham Park defendants prior to the June 15, 2020 return date. Nevertheless, the order to show cause required the parties to provide

A-0226-20

"courtesy copies" of all pleadings to Florham Park and the FSHC. Florham Park's attorney attended oral argument on plaintiff's application on the return date, but declined to participate in that proceeding.[4]

In an affidavit submitted in support of Morris' answer, the township's engineer stated that contrary to plaintiff's assertion that a private entity could not operate a pump station and force main, a number of private entities also pumped effluent into the Morris system, including another development known as the "Honeywell Property." According to the engineer, all that an entity needed to operate its own pumping system was the appropriate license. The engineer further stated that Morris did not own or operate any pumping stations outside its borders.

Morris' township administrator also submitted an affidavit in opposition to plaintiff's pleadings. The administrator cited to the 1981 agreement, which clearly stated that plaintiff agreed to construct, own, and maintain its pump station and force main and further agreed that Morris and Florham Park would have no responsibility for it. The administrator asserted that the operation of

---

[4] The FSHC submitted a letter brief in support of plaintiff's application and participated in oral argument before the trial court. Despite their lack of formal status as parties in this appeal, both FSHC and Florham Park have filed briefs with this court and, absent any objection from defendants, we have duly considered these submissions.

any "pump station is a maintenance nightmare" which the township did not wish to undertake. The administrator also noted that Morris would "receive no new revenue if it were required to undertake the operation of the pump station and such additional duty would result in [a] new financial burden to the [t]ownship for which it [would] receive[] no compensation."[5]

However, Morris again made clear it would accept the effluent generated by the Toll Brothers development into its sewer system. As a result, defendants' attorney advised the trial court in a May 29, 2020 letter that Morris was "somewhat at a loss to understand why this matter is proceeding as an Order to Show Cause when, to the best of our knowledge, the development approvals have not yet been obtained and title to the property has not even passed to Toll Brothers."

Morris also objected to the matter proceeding in a summary manner at oral argument on June 15, 2020. Through its attorney, Morris argued there were disputes of material facts between the parties and that there was no need to resolve this litigation in an emergent or summary proceeding.

---

[5] The Morris administrator submitted a second affidavit on June 9, 2020, which mirrored the assertions made in his initial affidavit.

A-0226-20

To summarize, at the time of the June 15, 2020 return date on plaintiff's order to show cause, the record revealed that plaintiff owned and operated the pump station and force main it constructed pursuant to its July 1981 written agreement with Morris and Florham Park. That contract provided that neither municipality would be responsible for the operation of this system. The record further showed that plaintiff had retained a private company to operate the system, but the identity of that entity was unknown, as was whether plaintiff had ever been advised by the Board of Public Utilities or any other governmental agency that plaintiff was unable to lawfully continue to maintain its facility.

The record indicates there was a contract of sale under which plaintiff agreed to sell a portion of its Florham Park property to Toll Brothers, but a copy of that agreement was not submitted to the court and it was not clear whether closing was contingent on plaintiff operating the pump station or transferring ownership, maintenance, and control of the system to Morris or Florham Park. All that was certain was that the closing had not yet occurred and that Toll Brothers had not yet obtained any municipal approvals from Florham Park for its proposed project.

While plaintiff alleged that Florham Park lacked the capacity in its sewer system to accommodate the effluent to be generated by the Toll Brothers project,

14

Florham Park did not submit any affidavit or certification attesting to the veracity of this claim. Florham Park also did not establish that it was unable to accept ownership of the pump station from plaintiff. Indeed, because no court testimony or discovery depositions were permitted by the summary proceeding employed by the court, none of the parties' conflicting factual representations were subject to cross-examination.

The record shows that plaintiff's pump station and force main does not meet "present-day engineering standards," but nothing was presented to the court to establish the cost plaintiff would have to incur to accomplish the improvements necessary to meet these standards. On this topic, all the court had before it was plaintiff's counsel's oral representation that plaintiff would have to pay hundreds of thousands of dollars to modernize the system. If plaintiff did perform the engineering survey as alleged in its complaint, any report generated as a result of the survey was not submitted to the court.

Plaintiff presented no written proposal detailing how or when it would transfer ownership, maintenance, and control of the pump station and force main to Morris. The court also did not know whether plaintiff proposed to transfer the property the system was located on to Morris and whether, if it did, Morris would then have to pay taxes or other fees to Florham Park as a result. There is

15

absolutely nothing in the record to establish the cost Morris would incur on an annual basis for operating and maintaining plaintiff's pump station and force main.

In spite of these critical deficiencies in the record, the trial court granted plaintiff the permanent injunctive relief it sought. First, the court rendered a short oral opinion at the end of oral argument on June 15, 2020, with a confirming order being filed on June 24, 2020. Although defendants had already agreed to accept the effluent generated by the Toll Brothers development into its sewer system, the court ordered defendants to "provide sewer treatment for the inclusionary developments proposed on [p]laintiff's property in the Borough of Florham Park and the Township of Morris . . . ."[6]

Thereafter, in a written decision and accompanying order rendered on August 11, 2020, the court granted plaintiff the remaining injunctive relief it sought. Specifically, the court ordered that plaintiff was to make all "reasonable and necessary improvements" to its pump station and force main "as may [be] recommended by" Morris' consulting engineers and pay the full cost of same. The court stated that plaintiff would then be permitted to transfer "ownership

---

[6] Defendants do not challenge this portion of the order on appeal.

and operation" of this system to defendants "to ensure the prompt and efficient construction" of Toll Brothers development in Florham Park.

While lengthy, the court's opinion is largely, if not entirely, premised upon its conclusion that because Toll Brothers proposed to build affordable housing on the Florham Park property it had contracted to purchase from plaintiff, Morris, as a neighboring municipality, was obligated by case law to provide assistance to the project by accepting the effluent from the development. See Samaritan Center, Inc. v. Borough of Englishtown, 294 N.J. Super. 437, 455 (Law Div. 1996). The court also determined that the Law Division's holding in Samaritan Center, which stated that under appropriate circumstances a court could require an adjacent township to open its sewer system to an affordable housing development under the jurisdiction of a nearby municipality, was not limited to the acceptance of the effluent. Thus, the court found that it also had the authority to order Morris to accept ownership of plaintiff's pump station and force main, a legal determination which no other court in this State has ever made even on a fully developed factual record.

In so ruling, the court acknowledged that Morris opposed proceeding in a summary fashion and had argued that "the court's inquiry into the merits of plaintiff's application should entail an exhaustive analysis of the prospective

17

burden upon the [t]ownship's operation and maintenance regarding the pump station and force main, with particular attention paid to the impact upon rate users, taxpayers, and traffic patterns and congestion." However, the court rejected this argument by pointing to the fact that Morris stated during its negotiations with plaintiff that the density of the Toll Brothers project was too high. Based upon this statement, and without taking any testimony on the issue, the court found that defendants' concern with the undetermined cost of taking over plaintiff's sewer system was merely a pretext to hide its animus toward the construction of additional affordable housing in the area. This appeal followed.

II.

On appeal, Morris argues that the trial court mistakenly: permitted plaintiff to obtain permanent injunctive relief through an order to show cause; allowed the matter to proceed in a summary fashion; and arrived at its rulings by resolving material disputes of fact in favor of plaintiff without discovery or a plenary hearing. Morris also asserts that the court should have joined Florham Park and FPSA as indispensable parties to this litigation. We agree with these contentions.

The trial court erred in granting a permanent injunction requiring defendants to take over ownership, maintenance, and control of plaintiff's pump

station and force main on the return date for the order to show cause. As we explained in Waste Management of New Jersey, Inc. v. Union County Utilities Authority, 399 N.J. Super. 508, 516 (App. Div. 2008), "[t]he process adopted in our court rules for seeking injunctive relief applications . . . does not allow for the entry of an order to show cause for the entry of a permanent injunction; rather, it permits only the entry of an order requiring a party to show cause why a temporary restraint or an interlocutory injunction should not issue." Ibid. (emphasis in original) (citing R. 4:52-1 and 2; Solondz v. Kornmehl, 317 N.J. Super. 16, 20-21 (App. Div. 1998)).

As noted above, the trial court's order to show cause referenced plaintiff's intention to "move[] to have [the] [c]ourt hear this cause summarily pursuant to . . . Rules 4:67-1(a) and 4:67-2 . . . ." However, our court rules precluded plaintiff from proceeding in this fashion. Although Rule 4:67-1(a) permits "the entry of an order at the commencement of the action that requires a defendant to show cause why final judgment should not be entered," Waste Management, 399 N.J. Super. at 516, n.2, proceeding under this Rule is allowed only when a "rule or statute" authorizes the court to resolve the matter summarily. Ibid. Here, there was no applicable rule or statute that permitted plaintiff to proceed summarily.

Further, a permanent injunction was improperly issued here because neither the order to show cause nor the resulting proceedings suggested that defendants consented to a summary disposition of the dispute. As the Waste Management court explained:

> We are mindful that in practice it is not unheard of for parties to consent to a final determination on the return of an order to show cause for an interlocutory injunction when the facts are not in dispute or when an evidentiary hearing would add no illumination to the court's resolution of the issues presented. It is also not uncommon, when a plenary hearing is conducted for the purposes of resolving factual disputes on an interlocutory injunction application, for the parties to consent to have the trial judge render a final judgment. Such a sensible and practical approach often provides the parties with a swift and efficient resolution of their disputes that is not inconsistent with our rules of procedure, which favor "just determination[s], simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." R. 1:1-2 (citations omitted). Accordingly, we do not intend to preclude pragmatism in the resolution of disputes, but we must insist that such an approach is only appropriate when the parties understand and consent to a summary disposition of their disputes. Otherwise, the process would possess only the qualities of simplicity and efficiency, not fairness or justice.
>
> [Waste Mgmt., 399 N.J. Super. at 518 (emphasis added).]

Morris plainly did not consent to have the matter resolved through a summary proceeding. It also disputed many of the facts alleged by plaintiff.

Yet, the trial court did not require the parties to present testimony on any of the issues involved in this case. Therefore, the court should not have attempted to resolve these factual disputes on the basis of the parties' conflicting certifications.

In addition, the record at this early stage of the proceedings clearly did not contain sufficient information to enable the trial court to make a reasoned decision on whether defendants should be required to take over ownership, maintenance, and control of plaintiff's sewer facility. For example, there is no evidence in the record establishing the costs Morris would incur if it were required to take over the pump station and force main. In addition, the system did not meet existing engineering standards and plaintiff had not made any of the required improvements to it. Nevertheless, the court addressed these disputed factual issues by merely stating, "Here, we have another undisputed fact: Morris Township has the ability to accept ownership of the pump station and force main – a utility that is up to date and state of the art."

Later in its decision, the court stated that "it has been repeatedly made clear that Florham Park's inheritance of the pump station, which served the Morris Township Sewer Service Area, is not a viable option." However, there was no evidence in the record that Florham Park was unable to own and operate

21

plaintiff's pump station and force main. The foregoing examples are only two of the many instances in the August 11, 2020 decision where the court resolved disputed factual issues in plaintiff's favor or rendered its rulings without requiring plaintiff to provide the information necessary to support them.

In addition, there was simply no compelling reason to proceed in an emergent, summary manner in this case, especially after Morris agreed to accept the effluent generated by the Toll Brothers project. Plaintiff and Toll Brothers had not even closed on the proposed sale of the property; Toll Brothers had not received any municipal approvals from Florham Park; and there was no evidence that any State or local authority had barred plaintiff from continuing to operate the pump station and force main, or proposed to do so at some point in the future. Therefore, there was no exigency requiring the resolution of this matter on less than a fully developed record.

Finally, the legal basis for the trial court's ruling was far from settled. While courts have held that a neighboring municipality may have to assist another town by opening up its sewer system to accept waste generated by an affordable housing project, no court has ever required that municipality to also be responsible for maintaining sewer pumps, mains, pipes, or other equipment outside of its borders. See Dynasty Bldg. Corp. v. Borough of Upper Saddle

River, 267 N.J. Super. 611, 616 (App. Div. 1993) (stating that "an order requiring [one town] to make existing sewer capacity available [for a neighboring municipality's] Mt. Laurel inclusionary development sites comports with the concept that municipal obligations to provide for low and moderate income housing are established on the basis of regional responsibility"); Samaritan Center, 294 N.J. Super. at 455 (holding "that even in the absence of a pre-existing co-operation or inter-municipal agreement, each municipality, whether developing or developed, has an obligation to facilitate, if not assist, the regional goal of providing realistic housing opportunities for low and moderate income people in a cost effective manner" by opening its sewer system to a neighboring town); See also Bi-County Dev. of Clinton v. Borough of High Bridge, 174 N.J. 301, 328 (2002) (where our Supreme Court emphasized that "[c]ompelling circumstances should exist in order to justify, under Mount Laurel principles, disturbing the general rule that a municipality may exclude another municipality or its residents from using or connecting to its sewer system").

Here, the trial court ordered Morris not only to accept the effluent from the proposed Toll Brothers development in neighboring Florham Park, a responsibility that Morris had already accepted, but also required it to own and operate a sewer pump station and force main within its neighbor's sole

23

jurisdiction. And, as stated above, the court rendered this ruling without even knowing the tax burden that would be placed on Morris' residents by this unprecedented undertaking.

Under all of these circumstances, we are satisfied that the court erred by granting plaintiff the permanent relief it sought on the return date of the order to show cause under the truncated, summary procedure it employed in this highly contested and complex matter. Therefore, the portion of the August 11, 2020 order requiring defendants to take over the ownership and operation of plaintiff's pump station and force main cannot stand.

Accordingly, we vacate this portion of that order and remand for further proceedings.[7] The trial court should permit the parties to engage in discovery, including depositions. Prior to doing so, however, the court should allow defendants to serve their third-party complaint upon Florham Park and FPSA, or file a motion to join them as indispensable parties under Rule 4:28-1. In remanding this matter, we do not suggest a preferred result, but only that the trial court reconsider the matter and ensure that the factual record and the parties' legal arguments are fully developed and addressed.

---

[7] As noted above, defendants previously consented to accept the effluent to be generated by the Toll Brothers development into its sewer system. Therefore, we affirm the portion of the August 11, 2020 order requiring it to do.

A-0226-20

Affirmed in part; vacated in part; and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0226-20